(No. 6774.   October 24, 1940.)

EARL E. WATKINS, Appellant, v. DAN J. CAVANAGH, Employer, and STATE INSURANCE FUND, Surety, Respondents.

[107 Pac. (2d) 155.]

E. B. Smith and Dale Clemons, for Appellant.

Clarence L. Hillman, for Respondents.

HOLDEN, J.—Claimant, Earl E. Watkins, began working for Dan J. Cavanagh, road contractor, as a shovel oiler the latter part of July, 1937. August 22, 1937, while removing an oil pump from the power shovel, the pump fell on his chest and "hurt claimant bad." The following day claimant developed a severe case of traumatic pneumonia, followed by the complication of phlebitis, or "milk leg," in his left leg, caused by the pump falling on his chest and inflicting a severe bruise. He was abed for 47 days and did not attempt to work until the latter part of December, 1938.

Notice of the injury and claim for compensation were immediately given and filed, and the State Insurance Fund promptly paid all medical expenses as well as compensation for total disability from work for the period beginning August 23, 1937, and ending January 20, 1938.

April 8, 1938, claimant filed an application claiming compensation for an additional period of disability from work and for permanent disability caused by the after-effects of milk leg in his left leg. The matter was heard, first at McCall, July 5, 1938, and later, September 19, 1939, at Boise,

by stipulation of the parties. October 21, 1939, the board, among other things, found:

"That claimant was totally temporarily disabled for work from and including the 23rd day of August, 1937, until the 20th day of January, 1938; that after said 20th day of January, 1938, claimant was able to and did do small jobs; that he was, however, partially temporarily disabled for work from the 19th day of January, 1938, until the 28th day of June, 1938; that on said last mentioned date, claimant's disability for work ceased.

"The claimant now has a permanent injury in his left leg consisting of a disturbance of the circulatory system in said leg, distended veins, tenderness and a disproportionment of the legs, the left being somewhat larger than the right; that the disability resulting from said permanent injury is comparable to 10% of the loss of the leg by amputation at the hip."

It then made the following award:

"Wherefore it is ordered, and this does order, that the defendants, Dan J. Cavanagh, employer, and State Insurance Fund, surety, and each of them, pay to the claimant, Earl E. Watkins, for his partial temporary disability for work, 55% cf the difference between his average weekly wage of $36.40 and the weekly wages he was able to earn from January 20, 1938, to the 28th day of June, 1938, but in no case to exceed $12.00 a week, and additional compensation for his permanent injury at the rate of $12.00 per week for 99% of 18 weeks . . . . "

Two questions are presented on this appeal by the claimant, namely: (1) Has appellant suffered a permanent injury comparable to the loss of a leg at the hip, or to a lesser degree as found by the board. (2) Should the board have fixed the rate of weekly compensation which appellant is entitled to receive for his partial disability for work suffered during the period commencing January 20, 1938, and ending, June 28, 1938. These questions will be discussed in the order stated.

Dr. Don S. Numbers, claimant's physician, examined him at regular intervals up to the date of the hearing, July 9, 1938. He testified claimant had suffered a permanent injury to his left leg: continual tenderness, thickening lymphat-

ics, varicose veins, and that the left leg was larger than the right, all of which resulted in pain and inability of the claimant to stay on his feet for any length of time. He *estimated* claimant's disability comparable to the amputation of a leg at the hip and stated positively claimant could not again do the work he was doing before the accident.

Dr. S. M. Poindexter, a witness for respondents, testified: He examined claimant in January, 1938, and from his examination found no evidence of permanent disability other than "enlarged veins on the anterior lateral aspect of the left leg." That he subsequently examined claimant and found him afflicted with "flat feet," or fallen arches, to which the doctor attributed claimant's pain and inability to stay on his feet. He further found claimant had varicose veins to a moderate degree, had an abnormal circumference to his left leg, and that he might have a possible permanent circulatory disability, the extent of which the doctor would not *estimate* in view of the factor of flat feet.

Claimant testified his left leg was enlarged, swollen and tender; that it would swell when he worked on his feet, causing a pain which increased with the use of the leg, and consequently he was unable to do the type of work he did prior to the injury. That he had tried such work and been unable to put in a full day. However, he testified that since his injury he had worked as follows: That beginning May 1, 1938, he worked ten days for his father as a carpenter; that in the fall and winter of 1938, and spring of 1939, he worked cutting wood, receiving about $4 per cord during the period from July, 1938, to January, 1939; that he worked for his father carpentering in April and May, 1939; that he worked seven days for the Tri-State Construction Company in July, 1939, at 50¢ an hour, 40 hours a week, and that he spent the rest of the summer mining.

While Dr. Numbers testified positively that in his opinion the disability amounted to the loss of a leg at the hip, and Dr. Poindexter first expressed the opinion there was no permanent disability and later refused to estimate the extent of the disability because of the factor of flat feet, such testimony was purely advisory (*Nistad v. Winton Lumber Co., ante*, p. 1, 99 Pac. (2d) 52; *Evans v. Cavanagh*, 58

Ida. 324, 331, 73 Pac. (2d) 83, 85; see, also, *Montgomery Ward & Co. v. Industrial Com. et al.*, (Colo.) 94 Pac. (2d) 689). In the Nistad case, *supra*, we held:

"The testimony of an expert, as to his opinion, is not evidence of a fact in dispute, but is advisory, only, to assist the triers of fact to understand and apply other evidence."

And in the Evans case, *supra*, it was held:

"There is little or no conflict in the evidence other than in the testimony of medical experts. The testimony of an expert as to his opinion is not evidence of a fact in dispute, but is advisory, only, to assist the triers of the fact to understand and apply the testimony of other witnesses."

As will have been noted, the claimant himself testified that after his injury he had worked ten days, beginning May 1, 1938, as a carpenter; as a woodcutter in the fall and winter of 1938 and spring of 1939; again as a carpenter in April and May, 1939; that he worked seven days for the Tri-State Construction Company in July, 1939, at 50¢ an hour, 40 hours per week, and that he spent the rest of the summer mining. And even though claimant's leg was enlarged and tender and he had varicose veins and a possible circulatory disability, as testified by Doctors Numbers and Poindexter, it was for the board to determine under all the evidence the degree of disability. And where, as here, there is sufficient competent evidence to support the finding and award of the board this court will not disturb the same. (Sess. Laws 1937, chap. 175, pp. 288–290, subd. (a) of section 2; *O'Niel v. Madison Lumber & Mill Company*, *ante*, p. 546, 105 Pac. (2d) 194.)

We come now to the second question, involving the failure of the board to find the average weekly wage of appellant earned during the period of his partial temporary disability from January 20, 1938, to June 28, 1938. The record discloses claimant overlooked submitting any evidence as to his average weekly earnings during that period. In *Feuling v. Farmers' Co-operative Ditch Co.*, 54 Ida. 326, 334, 31 Pac. (2d) 683, this court held:

"When a claimant has failed or overlooked submitting evidence to establish the amount of compensation to which he is entitled, and there is no question but that he is entitled to

compensation, then it is the duty of the Board to call attention to such failure and see to it that whatever evidence is available to establish such fact is presented, and then make the necessary findings of fact.''

Therefore, .that part of the award awarding weekly compensation for partial temporary disability between January 20, 1938, and June 28, 1938, is reversed and the cause remanded with directions to take evidence on the question and make an appropriate finding.    Costs awarded to appellant.

Ailshie, C. J., and Budge and Givens, JJ., concur.

Morgan, J., deeming himself disqualified, did not sit at the hearing or participate in the decision.

Petition for rehearing denied.