380 P.2d 208

**Aleene KIGER, Claimant-Appellant,**

**v.**

**The IDAHO CORPORATION, Employer, and the Employers Fire Insurance Company, Surety, Defendants-Respondents.**

**No. 9180.**

Supreme Court of Idaho.

March 26, 1963.

Spencer W. Nelson, Coeur d'Alene, for appellant.

Elam, Burke & Jeppesen, Boise, for respondents.

McQUADE, Justice.

On Friday, September 16, 1960, the claimant, Aleene Kiger, received a personal injury which was caused by an accident arising out of and in the course of her employment with the defendant, The Idaho Corporation. Claimant, while carrying flats of eggs, stepped off a platform, slipped on a broken egg and fell onto the concrete floor. On September 24, 1960, claimant consulted James W. Hawkins, a physician, for treatment of her injuries. Pursuant to an examination of the claimant, Dr. Hawkins testified he found evidence of contusions and black and blue spots on claimant's right hip and right arm. Dr. Hawkins determined claimant had severely strained her right lower back and right sacroiliac. X-rays revealed no evidence of fracture. The doctor's treatment of the injuries consisted of ultra sound, diathermy, ACTH injections, salicylates and injections locally at the spastic areas involved.

Claimant revisited Dr. Hawkins for treatment of those injuries on September 27, 28 and 29, and again on October 8, 1960.

Claimant, after the industrial accident, continued to work for her employer for three weeks, with occasional absences from work due to the accidental injuries.

On October 10, 1960, while on her way to visit Dr. Hawkins for treatment, claimant was involved in an automobile accident. Due to the traffic accident, claimant suffered severe neck and shoulder injuries. As of December 19, 1960, she was still complaining of that condition and continued to receive treatment to the area injured in the industrial accident.

On October 2, 1961, claimant filed a petition for a hearing before the Industrial Accident Board seeking compensation and medical expenses resulting from injuries received from both accidents. A hearing was held at Coeur d'Alene, Idaho, on October 12, 1961. Dr. Hawkins testified that claimant was disabled from the low back injury; that she had a very unstable sacroiliac joint which was being stabilized with braces; that she sustained a further injury to her neck and shoulder; that at the time of the hearing Dr. Hawkins had the claimant under treatment for the low back injury. At the hearing, Dr. Hawkins testified that in his opinion claimant was permanently disabled to an extent equal to between 15 and 18% of the loss of a leg at the hip plus the same percentage of the loss of an arm at the shoulder. Dr. Hawkins further testified that charges for treatment of the claimant subsequent to the second injury were for treatment of both injuries and that he could not separate the charges.

Claimant testified that on the day of the automobile accident she was on her way to see Dr. Hawkins for treatment of injuries suffered in the industrial accident; that she did not work for the defendant on the day of the accident; and that as a result of the automobile accident her condition became worse.

Pursuant to stipulation of counsel for the parties to this action, a deposition of Dr. Alexander Barclay was taken for use by the Board in its determination of this claim. Dr. Barclay stated that his examination of claimant disclosed no apparent disability; that the pain claimant complained of was caused, in his opinion, by the second accident; that claimant had indicated to him during the examination that she was "virtually healed" from the first accident at the time she had the second accident; that injuries of the type complained of by claimant are not permanently disabling; and that he felt that Dr. Hawkins' estimate of the permanent disability was "high."

The Industrial Accident Board found that the first accident was compensable under the Workmen's Compensation Law but that the

second accident did not arise out of and in the course of claimant's employment with the defendant employer and therefore was not compensable notwithstanding the fact that claimant was enroute to see her doctor for treatment of injuries suffered in the industrial accident. The Board concluded that the second accident was more severe than the first accident and was the cause of the upper back disabilities and increased claimant's low back disability. The Board determined that claimant's partial permanent disability relating to the low back injuries resulted from both accidents; was equivalent to 16⅔% of the loss of a leg at the hip; and that claimant was entitled only to that portion of the above disability attributable to the first accident. The Board computed the partial permanent disability resulting from the first accident to be the equivalent of 8⅓% of the loss of a leg at the hip and awarded claimant compensation of $30.00 per week for 15 weeks, an aggregate of $450.00. The Board disallowed claimant's request for medical and kindred expenses subsequent to October 10, 1960, on the grounds that such expenses were necessitated by the automobile accident and not the industrial accident.

Claimant appeals from the order of the Industrial Accident Board contending, in essence, that the Board erred in determining claimant was not entitled to compensation for injuries suffered in the automobile accident on October 10, 1960, and erred in refusing to make an award for expenses and disability resulting from the automobile accident.

■ A claimant in a workmen's compensation proceeding has the burden of proving the compensable disablement. Flasche v. Bunker Hill Company, 83 Idaho 420, 363 P.2d 1024; Darvell v. Wardner Industrial Union, 78 Idaho 309, 302 P.2d 950; Dunn v. Morrison-Knudsen Co., 74 Idaho 210, 260 P.2d 398. Accordingly, a claimant must not only prove she was injured, but she must also prove that the injury was caused by an accident arising out of and in the course of her employment. I.C. § 72–201; Davis v. Sunshine Mining Co., 73 Idaho 94, 245 P.2d 822; In Re Croxen, 69 Idaho 391, 207 P.2d 537.

■ To carry out the provisions of the Workmen's Compensation Act the Industrial Accident Board has the responsibility and authority to examine any competent witness and to subpoena and examine other competent witnesses; Nistad v. Winton Lumber Co., 59 Idaho 533, 85 P.2d 236. In further amplifying this proposition, Justice Smith in the dissenting opinion in Devlin v. Ennis, 77 Idaho 342, 292 P.2d 469, quoted this rule with a comprehensive citation of Idaho authorities.

■ In determining whether or not an injury was caused by an accident arising out of and in the course of employment, the

**430**

following rule is stated in Eriksen v. Nez Perce County, 72 Idaho 1, 235 P.2d 736:

> " 'It is sufficient to say that an injury is received "in the course of" the employment when it comes while the workman is doing the duty which he is employed to perform. It arises "out of" the employment, when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises "out of" the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment.' "

■ A review of the record indicates that the only connection established by claimant between her employment and the injuries received from the accident of October 10, 1960, is found in statements that she was on her way to see Dr. Hawkins for treatment of injuries suffered in the industrial accident when she was injured in the automobile accident. The facts of Farmers' Gin Co. v. Cooper, 147 Okl. 29, 294 P. 108 are very similar to this case. Therein, an employee suffered an injury in the course of his employment. Several days later, while traveling in his own automobile to have his injuries treated he suffered additional injuries in an automobile accident. The employee filed a claim under the Workmen's Compensation Law to recover compensation for injuries received in the accident. That court denied recovery, holding that the highway collision was an intervening cause breaking the causal connection between the injury and the employment. That court further stated:

> "The decisive fact is that the latter accident was in no sense due to the employment, nor did it result from a risk reasonably incident to the employment and there is a severance rather than a causal connection between the conditions under which the work was required to be performed and the resulting injury."

In Linder v. City of Payette, 64 Idaho 656, 135 P.2d 440, this court said:

> "A recognized concomitant is that if there occurs, after the initial accident and injury, an intervening, independent, responsible, and culminating cause, the latter occurrence becomes the proximate cause."

We conclude that the Industrial Accident Board was correct in ruling as a matter of law that the accident of October 10, 1960, did not arise out of and in the course of claimant's employment.

■ The finding of the Board that the accident of September 16, 1960, caused a partial permanent disability is supported by substantial evidence and will not be disturbed.

Dr. Barclay's testimony shows that he conducted an examination of claimant on behalf of the defendant, Surety, "to determine the extent of the injury to her back."

In that regard his testimony on direct examination is as follows:

"Q. I take it from your answers on cross examination, Doctor, you didn't make any effort in your examination to determine the extent of permanent disability as is generally done by percentage basis?

"A. I did not.

"Q. You were not asked to do that?

"A. No.

"Q. When you say that you feel that Doctor Hawkins' estimate is high in his rating, that is just based on your general observation?

"A. Yes.

\* \* \* \* \* \*

"Q. All I wanted to establish was the fact when you say that you felt that was high that was based upon your experience in evaluating injuries percentage-wise over the years.

"A. I have already said that I didn't attempt to evaluate her disability, but I do think that 15 per cent of one arm and one leg was too high."

While Dr. Barclay did not make an estimate of claimant's disability because he was "not asked to do that" nevertheless the import of his testimony is indicative that in his opinion claimant did suffer a degree of disability.

■ Dr. Hawkins was the only witness to testify concerning the extent of claimant's permanent disability. His testimony was that the claimant had a low back disability of 15 to 18% of the loss of a leg at the hip and a like percentage of the loss of an arm at the shoulder. There is ambiguity in the record as to whether these two estimates relate to the first accident or both accidents, although testimony of the doctor that the low back injuries have a residual permanent disability, if related to the nearest bodily member may perhaps be interpreted as 15 to 18% of the loss of a leg at the hip. So considered this disability would be entirely due to the compensable injury.

The estimates do not appear to be subject to the apportionment as made by the Board, based upon the evidence; and the Board should have taken additional testimony or made an award upon the record. See Watkins v. Cavanagh, 61 Idaho 720, 107 P.2d 155; Zipse v. Schmidt Bros., 66 Idaho 30, 154 P.2d 171.

This court in Smith v. University of Idaho, 67 Idaho 22, 170 P.2d 404 followed the rule that:

"'* * * all courts are agreed that there should be accorded to the Workmen's Compensation Act a broad and liberal construction, that doubtful cases should be resolved in favor of compensation, and that the humane purposes which these acts seek to serve leave no room for narrow technical construction.' "

Claimant contends the Board erred in failing to find claimant entitled to reasonable attorney fees. In this regard the Board failed to find and conclude relative to the issue of attorney fees. I.C. § 72–611 provides that if it is determined the employer or his surety contested a claim for compensation without reasonable grounds, the employer or his surety shall pay reasonable attorney fees in addition to compensation.

The Board also concluded that all medical services relating to the industrial accident were terminated on October 10, 1960, the date of the second injury. The record fails to support this finding.

The award is reversed and remanded for further proceedings and a redetermination. Upon redetermination of claimant's permanent partial disability compensation, if any, the Board will also consider the medical expenses incurred by claimant allocable to her first injury; also the subject of attorney fees from the standpoint whether or not the employer and surety contested the claim without reasonable grounds; and will find and rule accordingly followed by entry of appropriate award, if any, in the premises.

Costs to appellant.

KNUDSON, C. J., and SMITH, J., concur.

McFADDEN, Justice, with whom TAYLOR, Justice, concurs (dissenting).

I concur with the majority opinion that the Industrial Accident Board (hereinafter referred to as the Board) correctly held as a matter of law that the accident of October 10, 1960, did not arise out of and in the course of claimant's employment. However, I cannot concur in the reversal of the award and remand for further proceedings and redetermination.

On an appeal from an order of the Board, the review by this court is limited to questions of law. Idaho Const. Art. 5, Section

9; I.C. § 72–609. The constitutional provision and the statute impose upon this court the duty to affirm the Board unless the findings of fact are not based on any substantial, competent evidence.

This record discloses Dr. Hawkins was the physician that treated claimant for her injuries. Claimant, first injured September 16, 1960, continued to work after that date, first consulting her physician a week later on September 24, 1960. The report of Dr. Hawkins, in his first written report of this accident stated her injury did not result in any permanent disability. Reports of Dr. Hawkins, submitted after the second accident, in reply to an inquiry as to whether the injury will result in a permanent disability, merely show "Unknown". Dr. Hawkins described her first injury:

"At that time there was evidence of contusion, black and blue spots on her hip, her arm, and severe strain of her right lower back and right sacroiliac. X-rays were taken which revealed no evidence of fracture."

He further stated that at the time of the second injury she was off work:

"Yes, she was coming to my office for treatment of the spine condition in the low back area, and that was aggravated, and the severe neck and shoulder . injury were sustained on her way to the office.

&ast; &ast; &ast; &ast; &ast; &ast;

"Q. Would you give them an estimate of permanent disability, if you have any.

"A. I would estimate about 15 percent of the loss of the leg and arm—15 to 18 percent. Her low back is unstable on that side and I don't think it will improve much."

Claimant testified:

"MR. HUNTER: Were you getting better at the time you had the second injury?

"A. I feel maybe I was getting along a little better—I don't know. I was just steady getting worse all the time after I got hit, I was just a lot worse."

Dr. Barclay, a physician that examined claimant after both injuries, testified in his deposition:

"A. She suffered two distinct separate injuries to the back. The first occurred on the *17th* day of September, 1960, when she slipped on some eggs falling to the concrete floor. She progressed well under treatment and told me in fact she was almost recovered from that when she suffered the second injury in an automobile accident on 10–10–60 in which she injured both the upper back and the neck.

"Q. She indicated to you that she was virtually over the first injury at the time she suffered the second?

"A. Yes.

"Q. Did she indicate to you at the time you examined her where the present injury was bothering her with reference to whether it was her upper or lower back?

"A. In the upper back."

Dr. Barclay also stated he made a subjective and objective examination of claimant and examined the two X-rays taken by Dr. Hawkins; that claimant from his observation had a normal gait, no limp, or apparent disability; the spine was essentially negative, it had normal contours; there was no muscle spasms, nor limitation of motion of the spine; that she complained of no pain on bending, and the reflexes in the knees and ankles were normal; that straight leg lift caused no pain in the back; that the motion of the neck was not impaired and there was no complaint of pain on motion of the neck. That she did have some muscle spasm in the area of both shoulders in the suprascapular area.

He further testified in response to a question asking his opinion as to the cause of claimant's injuries:

"Of course I have very little to go on, but the patient's own statements, because I was not in a position to observe her during the time she had these two accidents, but she stated to me that she was practically over the pain and disability from her first injury when the second one came along."

In discussing the estimate by Dr. Hawkins of claimant's disability, Dr. Barclay stated he thought Dr. Hawkins' estimate of the disability resulting from the combined accidents was too high.

The Board had before it a conflict in the evidence as to claimant's estimate as to her condition at the time of the second accident, and also sufficient evidence from which it could have determined a partial permanent disability ranging from none to that equivalent to some degree less than 15 to 18 percent of the loss of the leg and arm.

The Board, in considering the opinions of Dr. Hawkins and Dr. Barclay was not bound to accept these opinions, for the opinions of experts are advisory only and are for the assistance of the triers of the facts to understand and apply other evidence. Nistad v. Winton Lumber Co., 61 Idaho 1, 99 P.2d 52; Evans v. Cavanagh, 58 Idaho 324, 73 P.2d 83. The Board, faced with a conflict in the testimony of the doctors as to the estimate of disability, resolved it as was done in Watkins v. Cavanagh, 61 Idaho 720, 107 P.2d 155.

The Board having made findings based on substantial competent evidence, this Court is bound by such determination. See: Watkins v. Cavanagh (supra); Bower v. Smith, 63 Idaho 128, 118 P.2d 737;

In Re Walker's Claim, 80 Idaho 420, 332 P.2d 199; Moeller v. Volco Builders' Supply, Inc., 81 Idaho 349, 341 P.2d 447; Sutton v. Brown's Tie and Lumber Co., 82 Idaho 135, 350 P.2d 345; Zimmerman v. Harris Lumber Co., 82 Idaho 187, 350 P.2d 746.

Dr. Hawkins testified that he was unable to allocate to the first accident or to the second accident, the amount of medical expenses incurred after October 10, 1960. The Board in its findings determined medical expenses after that date were not attributable to her first accident. This finding should not be disturbed, for claimant had the burden of proof to establish these items, which she failed to do. See: Stroscheim v. Shay, 63 Idaho 360, 120 P.2d 267; Miller v. City of Boise, 70 Idaho 136, 212 P.2d 654.

Claimant requested attorney fees be awarded under the provisions of I. C. § 72–611, which provides for an award in case the claim is contested without reasonable ground or the surety has refused or neglected to pay compensation within a reasonable time. The Board made no specific findings concerning this, but did not award any attorney fees. The record discloses a bona fide question as to the amount of medical expenses and loss of time attributed to the industrial accident and the automobile accident, which issue was not finally resolved until the hearing before the Board.

By its failure to make such an award the Board in effect denied such award. The failure to specifically find on this issue is not sufficient ground to remand the case for further hearing; the record is sufficiently clear that a specific finding is not needed to understand the issue; Merrill v. Merrill, 83 Idaho 306, 362 P.2d 887.

The award of the Industrial Accident Board should be affirmed.