350 P.2d 746

Helen ZIMMERMAN, Widow of Daniel T. Zimmerman, Deceased, Claimant-Appellant,

v.

HARRIS LUMBER COMPANY, Inc., Employer, and Employers Mutual Liability Insurance Company of Wisconsin, Surety, Defendants-Respondents.

No. 8826.

Supreme Court of Idaho.

March 30, 1960.

Paul Boyd, Boise, for respondents.

Elam & Burke, Boise, for appellant.

McQUADE, Justice.

This appeal is taken from an order of the Industrial Accident Board denying compensation to the widow of Daniel T. Zimmerman, who died August 1, 1958. The Industrial Accident Board found that Zimmerman did not die as the result of a heart attack on the job.

Zimmerman, during his lifetime, worked for the defendant Harris Lumber Company as a millwright, performing many and varied tasks, and being a key employee for the employer. On the day of his death, Zimmerman awakened about 5:30 in the morning, and instead of arising he turned over and lay for five or 10 minutes on his stomach. He then got up and sat in a chair, rubbing his face, and stated to his wife, Helen Zimmerman, the claimant, "I just don't feel very good this morning." Thereafter he dressed and ate breakfast, during which time he was pale and continued rubbing his face. Just before seven o'clock he departed in his car for the lumber mill, about two miles distant from his home.

About eight o'clock Zimmerman was seen standing near the head of the stairs leading up to the second floor of the mill. He was pale, holding his head in his hands, and complained of a pain between his shoulders. During the morning, Zimmerman assisted another workman in carrying two or three "resaws" from the resaw to the filing room, the resaw being a band saw approximately 60 to 70 pounds in weight and about 10 feet in length. This work required the services of two men, and was of a fairly strenuous type.

About nine o'clock, while proceeding up a steep stairway to the second floor, it was noticed by one of the employers that Zimmerman did not look well, and was having a difficult time climbing the stairs. At that time, an officer of the lumber company suggested that Zimmerman go home until he felt better.

He arrived home about 9:30, took a bath, and went to bed. He ate a noon lunch, and returned to the mill. There he performed some light work, and returned home around one o'clock in the afternoon, where he stayed for a little while, and then went downtown to perform a few personal tasks. He next left home about 10 minutes to five, and returned to the mill.

After returning to work, the mill superintendent observed Zimmerman picking up a big green board which was impeding the mill operation. This board was 30 to 36 inches wide, 30 feet long, and weighing about 150 to 200 pounds. Together with

another employee, Zimmerman lifted the board from the floor to the roll case, a distance of 36 to 40 inches.

Zimmerman's next strenuous effort was in assisting the resaw man to take up another resaw, the same as in the morning, and assisted carrying the resaw to the filing room. After laying the saw down, he fell to the floor, bumping his head upon a nearby chair. He had difficulty in breathing, and appeared blue in color. He died at approximately 5:15 p. m. Cause of death was described as "due to thrombosis of the left coronary artery with myocardial infarct, with degeneration due to the coronary arteriosclerosis."

There was substantial conflict in the medical testimony between two pathologists and three internists. Although there is no dispute in the facts, the conclusions of the expert witnesses are in conflict, some taking the position that Zimmerman's activities in the mill preceding his death were the probable and precipitating cause of his death. One stated the effort involved in his return to the plant was the precipitating, immediate factor of death. Another stated there was no relationship between the work and Zimmerman's death. Another stated there was no direct causal relationship between his work and his death. Still another stated the damage to the heart muscles had occurred outside the hours or conditions of employment. It was also testified to that the episode experienced by Zimmerman in bed indicated the occlusion had occurred previously and the infarction was then taking place.

In resolving the conflicting testimony of the expert witnesses, the Industrial Accident Board found that Zimmerman did not die as the result of a heart attack on the job. The Board stated the heart attack had occurred at or before 5:30 a. m. on the day of his death, while he was at home, and not at work.

The finding of the Board that Zimmerman did not suffer an accident in the course of his employment, from substantial, although conflicting, evidence, is binding upon this Court, and will not be disturbed upon appeal. Bower v. Smith, 63 Idaho 128, 118 P.2d 737; Stroscheim v. Shay, 63 Idaho 360, 120 P.2d 267; Barker v. Russell & Pugh Lbr. Co., 64 Idaho 45, 127 P.2d 772; Benson v. Jarvis, 64 Idaho 107, 127 P.2d 784; Cain v. C. C. Anderson Co., 64 Idaho 389, 133 P.2d 723; Jensen v. Bohemian Breweries, Inc., 64 Idaho 679, 135 P.2d 442; In re Smith, 72 Idaho 8, 236 P.2d 87; Shumaker v. Hunter Lease & Gold Hunter Mines, 72 Idaho 173, 238 P.2d 425; Kernaghan v. Sunshine Mining Co., 73 Idaho 106, 245 P.2d 806; Smith v. Potlatch Forests, Inc., 74 Idaho 470, 264 P.2d 684; Yanzick v. Sunset Minerals, Inc., 75 Idaho 384, 272 P.2d 696; Turner v. Boise Lodge No. 310, 77 Idaho 465, 295 P.2d 256; Brewster v. McComb, 78 Idaho

228, 300 P.2d 507; Darvell v. Wardner Industrial Union, 78 Idaho 309, 302 P.2d 950; Casger v. Fuger, 79 Idaho 56, 310 P.2d 812; In re Linzy, 79 Idaho 514, 322 P.2d 330.

The order of the Board is affirmed.

Costs to respondents.

TAYLOR, C. J., and SMITH, KNUDSON and McFADDEN, JJ., concur.